The Patent Trial and Appeal Board Mr. Rosenberg, it's my understanding you want five minutes for rebuttal? Yes. Or hoping for five minutes for rebuttal? We'll see. Both of the prior art and the present invention at issue involve a construction which has a manifold and flow comes into the manifold and it is distributed into connecting channels that are connected to the manifold. In the prior art, they recognized, in Fitzgerald's reference, they recognized the problem that is if you don't do anything to the connecting channels, the flow is going to come down the manifold and it's all going to tend to want to go through the last channel because that's where the momentum is going. Fitzgerald solved this problem by putting in gates or grates at the front of each connecting channel so that the channel furthest down the manifold in the direction of momentum is the smallest and then continually larger so that flow would be equalized in the connecting channels. The Patent Office has looked at Figure 1B, which is a tool, design tool, for analyzing the various dimensions and forces in a system and has said that you could make them all the same size in Fitzgerald. You could make all the openings to the connecting channels the same size. But that's not a reasonable interpretation because it wouldn't fix the problem. It would have unequal flow in the connecting channels, which was the very problem that Fitzgerald was trying to solve. So because that would defeat the purpose of Fitzgerald, it's not a reasonable interpretation of the Fitzgerald reference taken as a whole. Now in the present invention, the inventors have found that you could equalize flow in the connecting channels in a different way. You could do that by having a disrupted fluid in the connecting channels. This will tend to equalize flow, create some pressure drop, but it will tend to equalize flow in the connecting channels so that you'll have an equal distribution of flow. So inventors in the present case found, and there are examples in the back of the specification that show how this works, that... I think we sort of understand how it works, and so let's talk about some of the specifics about your objections to the precise findings. So you've got a number of claims here. What do you think is your strongest claim with respect to the absence of anticipation? The various claims have different strengths. I think claim 21 is the strongest claim. I think claim 43 is also a very strong claim because claim 43 explicitly says there are no gates, grates, or orifices. And Fitzgerald clearly says you have to have gates or grates. Does it say you have to or it says you may? It says to the person of ordinary skill reading it who wants to follow its instructions to build a device, it says you must, because otherwise you're going to have unequal flow. There's no way to read it to say that, oh, well, you wouldn't have gates or grates, because if you did that, you would have unequal flow, you would have the very problem that Fitzgerald seeks to solve. So you're saying that what Fitzgerald is saying is that when he says that a connecting channel may be a gate or other orifice and that the PTAB's interpretation that that means it may also not be, in other words, it doesn't have to be there at all, you're saying it's got to be one or the other. Yes. It's got to have something. Right. In view of Fitzgerald, that's what the teaching of Fitzgerald is, and that's, figure 1B is really a design tool that shows you all the different dimensions and forces. There's nothing in that paragraph or anywhere else in Fitzgerald that would provide guidance to the practitioner to set up a situation where there's no gates or grates at the front of the connecting channel. Well, what about Fitzgerald's reference to the equal cross-sectional area? It says that the cross-sectional area of a gate or any other orifice design may or may not be a different cross-sectional area than the channel. If it can be equal to the channel. Again, that's a design tool that they're talking about. Okay, let me finish. If it can be equal to the channel, doesn't that imply that if there's no difference, then it's not important to the design? It says one of the connecting channels that would be interpreted reasonably, the only reasonable interpretation is that one of the connecting channels may have a cross-sectional area where the opening is equal to the cross-sectional area, and that would be the one furthest up the manifold. Because the idea of gates is you have successively smaller openings as you go down the manifold in order to equalize flow. Where do you find, other than by implication, I guess is what you're saying perhaps, but I don't see in paragraph 185 of Fitzgerald anything that says at least, or to me even suggests, that we're talking about one of the channels. Yes, Your Honor. That paragraph should not be read in isolation. It should be read in conjunction with the definition of what a gate is, what an orifice is, and the specification as a whole. Well, where else in the specification would you look to find a suggestion that the reference to the area that may or may not be different from the channel is limited to a single channel? I would say the definition of gates and... What about the definition of gates tells us that this reference is only one channel? That gates have to have varying cross-section at the entrance of the channel. So if one were to look up the definition of gate. Where is that? The definition of gate at page, in Fitzgerald, paragraph 75. 75, okay. And for completeness, the definition of orifice is in paragraph 284. And in the definition of gate, what are you referencing in particular? That paragraph is a long paragraph. I'm just looking. I actually would have to... I don't have that paragraph in front of me right now. Okay. But doesn't that relevant sentence start with the word the channels, not a channel? Yes, and gates are understood in terms of a set of connecting channels. Since I'm running short of time, could I proceed with... Yes. Can we move to claim 16 for a second? Yes, Your Honor. Putting aside the waiver issue, I'm having a little bit of difficulty with your evidence of criticality when what you claim is essentially an unbounded range on the other end. I understand that there's an overlap between the two ranges, but your range has no top end, right? I would want to check the definition of connecting channels to see whether that has a top end. No, actually... No, this is your size range. The size range is limited because it calls them plural connecting microchannels and the definition of microchannels does limit the height of the channels. What is that height limitation? I believe in this application I think it's one centimeter, but it could be two millimeters. I'm not sure which of those it is. Where in your specification do you talk about at least 0.03 inches and how important that is? In the examples that's shown, we have three examples, one with a very low range, a very small height, and then 0.03 inch height and 0.05 height. The 0.03 and 0.05 are within the claim and they operate. They have a manifold volume that is less than the volume of the plural connecting microchannels, but in the case of the very small channel, you do not have a manifold volume that is less than the volume of the plural connecting microchannels, so it doesn't operate, functions very differently in the two cases. The thing that's troubling is that elsewhere in describing your invention, you continually say that you're looking at two millimeters or less as being the dimensions instead of saying 0.3 inches or more. And you say that several times, two millimeters or less, for example, in appendix page 142. So it's hard to see how the specification appreciates or suggests that the 0.03 inches is critical. I believe that's clear from the examples that it shows that it's critical. And Claim 21 requires the presence of a fluid and disrupted flow in a connecting channel or in the connecting channels. And that feature is not either – it's certainly not explicitly mentioned in Fitzgerald and it's not inherently mentioned in Fitzgerald either, and it's not – the patent examiner never alleged that it was. The patent examiner merely took the position that because the apparatus at Fitzgerald is capable of having a fluid and disrupted flow, that the Patent Office did not need to present any reasoning as to why there would be a fluid and disrupted flow. And I believe that's incorrect, that the Patent Office has the initial burden of showing that there is – either explicitly or inherently in the prior art. Does your argument here depend upon our conclusion that our case law that creates a rebuttable presumption when there's functional claim language use needs to be rethought? I believe that it depends on how one interprets the various cases in Ray Best and Ray Schreiber. And actually, in each of those cases, the patent examiner or the Patent Office does show why – provide sound reasons why the alleged features would be present. So in those two cases, the Patent Office actually does meet their initial burden of showing that it would – a reasonable basis why those features would be present. For example, in Best, they say, well, you're blowing air over the zeolite intermediate and that would naturally remove ammonia from – ammonia is a volatile component. Everybody knows that. That would naturally remove ammonia from the material. So they've met their burden in those two cases. This is actually, in my view, dicta in the cases, and it's the position of the Patent Office that's taken from this, that, well, you need to first determine whether a feature is functional or structural. And in the brief, I've gone at length to explain why that's not a valid distinction. And then you could ignore the functional descriptions and put the burden on the applicant. That's not what the PTAC did here, though, is it? I believe that it is. What about where they said in the opinion that it's inherent because of the structural features in the priority? Well, that's not a reasonable basis. It's like saying – But that's different. They didn't just say there's no reason and therefore now it's your burden. They did – I think I heard you saying they were just saying it's functional, so therefore I don't have to have a reason. Well, that's actually the patent examiner's position. And I don't believe that they've made any kind of reasonable showing that there would inherently be a disrupted fluid in the connecting channels. It's as if I had a cardboard cup and it came with directions to say put water in the cup, and the Patent Office would say, well, the cup is capable of holding boiling water, therefore it's holding boiling water. Well, there's no guidance in Fitzgerald that would lead the practitioner to a disrupted fluid in the connecting channels. What about through the definition of disrupted flow in your specification where you say it occurs – it can occur in smooth microchannels and also includes flows through microchannels having surface features and then talks about different surface features that could provide this disrupted or turbulent flow, including projections or recesses, three-dimensional tortuous flow paths, surface features such as chevrons or other shapes recessed into the channel wall. I mean, those are structures, right? But those are not in Fitzgerald. So those are structures, but they are not in Fitzgerald. Okay. Let me see if I understand your example about the paper cup. Suppose what we had was prior art. Let's not make it paper just to make it a little simpler. Let's say it's Pyrex glass, and the Pyrex glass is in the prior art, and the new application is to a Pyrex glass for holding boiling water. The Pyrex glass is exactly the same Pyrex glass as was in the prior art, but your invention is that this device can be used to hold boiling water. Is that patentable over the prior art? No, Your Honor, because the claim that you proposed says for holding boiling water. It doesn't say holding boiling water. Okay, holding boiling water. All right, that's one of the limitations is holding boiling water. Is that patentable over the Pyrex cup that is in the prior art? Well, the question, I think, is whether it would be anticipated or obvious. Well, let's say is it anticipated by the prior art cup, which is exactly the same cup, minus holding boiling water. If the prior art necessarily contains boiling water, then yes. If it doesn't, then no, and in this case, the fluid and disrupted flow provides a critical advantage over the fluid and non-disrupted flow, and in particular, non-disrupted flow would include laminar flow, which is actually a typical case for flow through a microchamber. So what is your distinction from Shriver? In this case, it says if Shriver had popcorn in the funnel. So in Shriver, the court specifically said, we're not going to rule on the case that says it comprises popcorn, and that was probably an error on the part of the applicant not to argue that, but the patent office said in that case that it was configured such that it could dispense popcorn. But in our case, it doesn't say configured or capable. It says comprising. So that is an element of the claim in this case, where in Shriver, popcorn was not an element. Okay, thank you. We'll give you two minutes for rebuttal. Good morning.  I would like to start with Claim 43, since that is one of the claims that Velazquez is claiming that it's one of the strongest claims. And in Claim 43, I think the distinction here is that what's claimed here are that there are gates or orifices or other types of structural elements are missing from the manifold or microchannel device. And as we discussed in Claim Figure 1B, which we can turn to. This is 1B at Fitzgerald. 1B at Fitzgerald. That's Appendix 23, I think. Correct, Appendix 23. And if we look at Figure 1B as well as Paragraph 185 and Page 95 of the appendix. Now looking at this paragraph, what the Board found is that these cross-sectional openings, ACC and AC1, as well as ACC and AC2, and ACC and AC3, can have the same cross-sectional area. And when they have the same cross-sectional area, it's as though an orifice or a gate is not present and the connecting channel is contiguous. Now Velazquez argues that because Fitzgerald defines gate in a particular manner, that it must therefore include a gate in its device. And that is simply not the case. And that's not the case because, as your Honors pointed out, here what Paragraph 85 states is that the opening can be a gate orifice or any other type of design, and that these gates are not necessarily present. I would like to now move on to Claim 16. And here, first, this issue of criticality was not argued before the Board, and so it's arguably waived. But to the extent this Court does consider the evidence that was presented. You made the same point in your briefing, arguably waived. And I always wonder when somebody says it's arguably something, do they really believe that it's waived or not? I believe it's waived. And the basis for that belief is the regulation, the PTO regulation that says you must argue something in the original brief, and it's not good enough to argue it in the rehearing brief. As I understand it, you're not contesting that this criticality argument, at least, whether it's persuasive or not, it was raised in the Petition for Rehearing. It was raised in the Petition for Rehearing, but it was not raised in the. . . But you say that's not good enough. It has to be in the original brief. That's correct, Your Honor. And does that apply as well if the Board addresses the merits of the point that was raised on rehearing? Does waiver still apply in your view? In our view, it still does apply. Of course, I guess here the Board alluded, at least briefly, to the fact that it wasn't raised before, but it wasn't clear to me that they were basing their judgment entirely on waiver, or at least that they weren't saying that's an alternative ground for rejecting the argument. Your Honor, here I believe the Board was looking at the evidence that was raised, and first it did make the finding that this argument was raised belatedly. Yes. And so, therefore, it does not need to consider the argument. But the Board did go further to look at the example that the lawsuit cites in its request for rehearing and found that there simply wasn't enough evidence there to show criticality of the invention. And on the merits, that's because there were only two data points? And that's because those two data points were at the higher end of the claimed range. Or rather, what it was showing was that at .03 inches and .05 inches, the invention was operable. But at .0006 inches, the invention was not as operable. And so it's not showing that that particular range is critical over, say, a data point of .079 inches. Such as shown in Fitzgerald. So you're saying it was the high end of the Fitzgerald range. It was only showing that a particular point works, but it does not show that the .079 inches that's disclosed in Fitzgerald would not be operable. Well, it was at the low end of the at least 0.03 range, right? It was at the low end of the at least range. Of the claimed range. That's correct. Not the high. Okay. That's correct. And your point that I take it is that 0.079 is only a little bit beyond 0.05. And therefore, who knows whether this advantage that flowed from the larger No pun intended. No pun intended. Would have applied if you'd popped up another 0.03. Okay. That's correct. That's correct. And now with respect to Claim 21, here, you know, the board found, it made its prima facie case of anticipation. And what the board found, and the examiner, what the board and the examiner found is that the structural elements found in Claim 21 were also found in the Fitzgerald reference. And Velocis does not dispute that. The only dispute that Velocis raises is that whether or not a fluid passing through that structure would flow in disrupted flow. And what the board found is that that is an inherent feature of the device. That the Fitzgerald reference, because it includes the same structural elements as found in Claim 21, would also be inherently capable of having a fluid pass in disrupted flow. What are those structural elements that would result in disrupted flow? In the Fitzgerald reference? Well, the Fitzgerald reference, as even Velocis argues, the Fitzgerald reference teaches many different types of microchannel devices. It includes gates, orifices, and other types of openings that could result in turbulent or transitional flow, which the 336 application defines as disturbed flow. They define disturbed flow as transitional or turbulent flow. And the Fitzgerald reference includes embodiments that also disclose transitional or turbulent flow. Where is that? I have the same question. It seemed to me that, well, you should answer Stiltz's question before I answer it. Sure. Well, first let's turn to, we can turn to APPX 87 of the Fitzgerald reference. And here at paragraph 42, the Fitzgerald reference discusses that in a preferred embodiment, the first flow regime is turbulent and the second flow regime is transitional. And thus, the Fitzgerald reference does contemplate embodiments that would include disturbed flow as Velocis has defined it. But doesn't your adversary say that's in the manifold? Right. Not through the microchannels? I mean, and if you read the paragraph above, it is talking about the fluid flow in the manifold. I mean, it's talking about the fluid passing through the macro manifold and then passing through the manifold implant. So it's talking about flowing through different parts of the manifold device. And, I mean, one of the things that this application, both the Fitzgerald application as well as the 336 application, it talks about these different channels sort of interchangeably in terms of the manifold, the sub-manifold, and the microchannels. But they aren't really interchangeable because it says passing through a manifold inlet and into a manifold. And then they talk, and then in 42 it says the first flow regime is turbulent and the second is transitional. And the other thing I think that we could also look to is that at APPX93, the Fitzgerald reference discusses the Reynolds numbers associated with laminar transitional and turbulent flow. What paragraph? It's paragraph 123 on page 93 of the appendix. And the application at issue discusses the same Reynolds values for these same types of flows. So both the Fitzgerald reference as well as the Velocities application envision flow to be laminar as well as turbulent or disturbed. So it's not that the Fitzgerald reference does not disclose any embodiments that have only laminar flow. They do disclose embodiments that have turbulent or disturbed flow. But there's nothing in Fitzgerald, as I understand it, that actually calls out a particular embodiment as producing a turbulent flow, if that's what one is trying to achieve. You wouldn't find anything, I take it, in Fitzgerald that would say here's how to get a turbulent flow, right? Well, the Fitzgerald reference does disclose different types of openings. Right, but it's not telling what's missing, it seems to me, from Fitzgerald, whether it's material or not is another question. But what's missing is anything that says if you want a turbulent flow, here's how to get it. The examples in the application tell you this is a turbulent flow with a high Reynolds number. And this is, at least these are two examples of how to get it, right? 0.03 and 0.05. Well, it does talk about how to get these different types of Reynolds numbers, but it also talks about how in preferred embodiments they can vary the turbulent flow. So at APPX 99, in paragraph, let's see, I believe it's paragraph 263, it talks if you go down 1, 2, 3, 4, 5, 6, 7, 8, 9, around 10 lines, it states that the value of the Reynolds numbers in preferred embodiments can vary across the manifold from turbulent flow to translational flow to laminar flow. And in other preferred embodiments it can vary from transition flow to laminar flow. And it basically talks about how these different manifold devices can have different flow within the different channels. So the fact that Fitzgerald also does contemplate having flow besides laminar flow, I think is indicative of there being the presence of turbulent flow within the microchannel devices. But there isn't an embodiment anywhere, well, tell me if there is, in Fitzgerald that says if you want turbulent flow, here's how to get it. Well, there may not have been an express embodiment disclosing how to get turbulent flow, specifically just teaching how to get turbulent flow, but because the structural elements that are found in Claim 21 are all found in the Fitzgerald reference, as well as the fluid itself, now remember this is a system claim and not an apparatus claim, and because this is a system claim where a fluid is flowing through a structure and that same structure is disclosed in Fitzgerald, it necessarily does anticipate the claim that philosophy has put forward. For all these reasons, we ask that the court affirm the court's decision. Okay, two minutes for rebuttal. On the issue of disrupted flow in Claim 21, the Patent Office position relies on the description of fluid and disrupted flow as a functional limitation. And this idea has become a plague on the Patent Office for applicants, and it should be reconsidered by the court because number one, it conflicts with our modern understanding of knowledge. Number two, it creates a paradoxical situation where claims of identical scope should receive unequal treatment. Claims using so-called structural language being allowed and claims using functional language being rejected, even though the two sets of claims are identical by definition. Even if you think there's some illogic to it, what's the harm in using it as a presumptive burden-shifting basis for analysis? Because functional language is actually how you tell the public how you know whether a given component is present in the system or not. So functional language provides the public with a test. Here's how you know. Does your alleged infringing component literally infringe or does it not literally infringe? You run the test, and then you know. The Patent Office position is promoting the idea that applicants should hide that test, because if you reveal that test, they're going to say, oh, it's functional, and therefore we're going to reject it and we're going to put the initial burden on you to prove that it's not in the prior art, which is very difficult because proving a negative is always much harder than proving a positive. In this case, for example, I don't think there's any evidence that could have possibly been provided that would have convinced this examiner that disrupted flow was a distinguishing characteristic. In fact, what this examiner did is pretty typical, I believe, where the patent examiners say, well, it's functional. I'm not going to consider it. I don't need to. That's what happened in this case. The examiner said, well, it's capable of having disrupted flow, therefore I'm not going to consider it as a patentable feature of the invention. And so even though it's illogical, yes, but it's also contrary to public policy because it discourages applicants from explaining how you know whether a component is or is not within the claim. You need to have a test. If you're going to be highly, highly specific, you need to have a test. How do you know whether a widget is in the claim? Well, how do you know something is a widget? Well, if you do these three tests and it meets all the criteria, then it's a widget. If it doesn't, then it's not. That's good to tell the public that. We would like to tell the public that so we will know whether a claim is literally infringed or not literally infringed. Anything else? Okay. Thank you. The case will be submitted. All rise. The honorable court is adjourned until tomorrow morning at 10 a.m.